MARCUS A. WOLFF, Appellant, v. ELIZABETH A. MATTHEWS, Respondent.

St. Louis Court of Appeals, February 18, 1890.

1. **Practice, Appellate: JURISDICTION.** When the supreme court transfers a cause to this court on the ground that the amount involved brings the cause within the jurisdiction of this court, it is the duty of this court to assume jurisdiction and decide the cause.

2. **Practice, Trial:** IRRELEVANT EVIDENCE. In a suit upon an account, instituted against the debtor by an assignee of the account, evidence of the indebtedness of the assignor is irrelevant; and the evidence is also prejudicial, when introduced to show the insolvency of the assignor, and to create in the minds of the jurors the inference that the assignment of the account had been made to defraud creditors of the assignor.

3. ———— : ————. Evidence that only a nominal consideration had been paid by the assignee to the assignor for the transfer of the account is also irrelevant and prejudicial in such case, when no counter-claim or set-off is pleaded, but the defense consists of a general denial.

4. **Evidence:** SECONDARY EVIDENCE OF ENTRIES IN BOOKS OF ACCOUNT. Books of account are the best evidence of charges contained in them, and when they are not produced, and their absence is not accounted for, secondary evidence of such charges is inadmissible.

5. **Set-off:** PARTNERSHIP AND INDIVIDUAL DEBTS. A debt due from a member of a partnership cannot be set-off against a debt due to the partnership.

6. **Action for Money Expended.** Although money be voluntarily expended by one for another, still, if the latter subsequently ratify the expenditure, an action will lie for its recovery.

*Appeal from the St. Charles Circuit Court.*—Hon. W. W. EDWARDS, Judge.

REVERSED AND REMANDED.

*Lackland & Wilson*, for the appellant.

*T. F. McDearmon*, for the respondent.

THOMPSON, J., delivered the opinion of the court.

The plaintiff brought this action as assignee of the firm of Levi Ashbrook & Co. to recover the sum of twenty-nine hundred and seven dollars and eighty-one cents, alleged to be due to the said firm on account of moneys paid out and advanced by them at the request of the defendant. The answer was a general denial. There was a trial before a jury, and a judgment was

rendered in favor of the defendant, from which the plaintiff prosecuted an appeal to the supreme court. The supreme court has transferred the cause to this court, on the view that, as a large portion of the account consists of items of interest, and as the plaintiff's evidence shows that no demand was made, such as would entitle him to interest, until within a short period of the bringing of the action, the amount in controversy, rejecting the excess of interest thus charged, would bring the cause within the appellate jurisdiction of this court. The supreme court having decided that it is within our jurisdiction, it is our duty to assume jurisdiction and decide the cause.

The account accrued between September sixth and November sixth, 1879, and the evidence of both parties showed that, during that time and for a long time prior thereto, James E. Ashbrook, who was the son-in-law of the defendant and a member of the firm of Levi Ashbrook & Co., acted as the *general* agent of the defendant, and in such character attended to all her affairs. The plaintiff adduced evidence proving the account, item by item, and proving that the firm of Levi Ashbrook & Co. had advanced all of the items of the account to the defendant, either at her own request or at the request of James E. Ashbrook, her agent; also that the firm of Levi Ashbrook & Co. had become dissolved, and that Levi L. Ashbrook, by whom the account had been assigned to the plaintiff Wolff, had become the owner thereof prior to the assignment of it. This brief statement seems to be sufficient to enable us to appreciate the bearings of the various assignments of error which have been made.

I. Against the objection of the plaintiff, the court allowed the defendant's counsel to interrogate Levi L. Ashbrook, on his cross-examination, as to the indebtedness of the firm of Levi Ashbrook & Co. This was improper. There was no such issue in the case. The

only object of the interrogation was to elicit the fact that the firm was insolvent, and to create the inference in the minds of the jury that the account had been assigned to Wolff for the purpose of cheating the creditors of the firm. It was, therefore, both irrelevant and prejudicial.

II.   Against the objection of the plaintiff, the court allowed the defendant to interrogate the same witness, on cross-examination, as to the *amount* paid by the plaintiff to witness for the account which is the subject of the suit, and the witness testified that the amount was about 25 cents, and his testimony tended to show that the assignment had been made to the plaintiff to effect some collateral purpose, and that it was not a sale for value. . This was irrelevant to any issue made by the pleadings.   It was sufficient that Wolff was the legal owner of the account, and the equities subsisting between him and Levi L. Ashbrook were wholly immaterial.   If the defendant had pleaded a counter claim or set-off against the firm of Levi Ashbrook & Co., then this evidence would have been relevant.   *State to use v. McHale*, 16 Mo. App. 478.   As it was, is was both irrelevant and prejudicial.

III.   James E. Ashbrook, a witness for the defendant, was permitted to testify, against the objection of the plaintiff, that the items of the account, which is the subject of the suit, were charged on the books of the firm of Levi Ashbrook & Co. to him individually. What purported to be the books of the firm were in court, but this witness testified: "The books in which these items were charged to me are not here.   We had a larger set of books, and in the other books the entries were charged to me."   The admission of this evidence, against the objection of the plaintiff, was error.   The books themselves were the best evidence ( *Anderson v. Volmer*, 83 Mo. 404, 407), and, even if the books to which the witness referred were not those which were

in court, it was the duty of the defendant to account for their absence, in order to let in secondary evidence of their contents. But no sort of foundation was laid for the admission of this evidence.

IV. Having thus committed the error of allowing secondary evidence of the entries in the books, the court intensified it by refusing to allow the plaintiff to disprove such secondary evidence by the books themselves. The plaintiff recalled Levi L. Ashbrook, who testified: "The books I have here were the only books that were used by the firm of Levi Ashbrook & Co. since 1876. All the entries since that date were made in these books. No other books have been used since that time. After we were discharged in bankruptcy in 1876, we opened up this set of books, and used no others since that time." Having laid this foundation, the plaintiff "offered in evidence the said books of the firm of Levi Ashbrook & Co., to show that the account was charged against Mrs. Matthews, at the time, and also to show that none of the said items were charged to James E. Ashbrook on his individual account." This evidence was excluded by the court. Clearly, the books were the only competent evidence to show the real truth upon the point testified to by James E. Ashbrook, whether the items of the account sued on had been, at the time when they accrued, charged to James E. Ashbrook, as he testified, or charged to the defendant. Whether the books would have been admissible for a larger purpose need not be considered; though it is to be observed that, as James E. Ashbrook was *general agent* of the defendant, and at the same time a member of the firm of Levi Ashbrook & Co., it may be that, in the absence of fraud, the books would be evidence against the defendant, on the footing of an admission, made by her through her agent—or, at least, on the footing of her being, through her general agent, privy to the entries in them.

V. Against the objection of the plaintiff, the defendant, Mrs. Matthews, was permitted to testify that James E. Ashbrook, who was a member of the firm of Levi Ashbrook & Co., was *largely indebted to her* at the time of the trial. This evidence was totally irrelevant, and must have been called out for the mere purpose of creating prejudice in the minds of the jury. An individual debt cannot be set off against a partnership debt (*Payne v. O'Shea*, 84 Mo. 129), and, if it could be, no set-off was pleaded in this case. The evidence was, therefore, totally irrelevant to any issue in the case, and that it was prejudicial is obvious.

VI. The court, at the request of the defendant, gave the two following instructions: "3. Although the jury may believe from the evidence that the amount claimed in the plaintiff's petition was paid by Levi Ashbrook & Co., plaintiff's assignor, in the discharge of the debts of the defendant, yet the plaintiff is not entitled to recover unless he has shown, to the satisfaction of the jury, that such payment was made at the personal request of the defendant, or some one duly authorized by her to make the request. 4. The jury are instructed that, before the plaintiff can recover, he must show, to the satisfaction of the jury, that the money claimed to have been advanced by the firm of Levi Ashbrook & Co., for defendant, was so advanced, at defendant's personal request, or at the request of some one duly authorized by her to make the request." We doubt whether these instructions, in the state of the evidence, were calculated to aid the jury in arriving at the real truth. There was evidence of a *ratification* by Mrs. Matthews of the act of the firm of Levi Ashbrook & Co. in respect of the first item, which consisted in paying to the sheriff of St. Charles county the sum of three hundred and fifty dollars and twenty-five cents on account of the plaintiff's farm, which had been sold for taxes. According to the testimony of Levi L. Ashbrook, her lands were advertised and sold for taxes.

He bought them in, and paid the amount. A deed was made to him, and he then made a deed to Mrs. Matthews. He also testified that he did this at her request, conveyed to him in a letter. He further testified: "After the time I paid the first item, Mrs. Matthews met me and thanked me for attending to it." It would follow from this that, even though the payment of this item may have been *officious*, that is, not made at the request of the defendant, or of any one authorized by her to make the request, in such a sense that it could not be made the foundation of an action against her (*Meier v. Meier*, 15 Mo. App. 68 ; s. c., affirmed, 88 Mo. 566), yet, if she nevertheless approved of it and ratified it, that would take the case out of the rule in respect of officious payments, and would make it the foundation of an action. In such a state of the evidence, instructions drawn in the above language, excluding the hypothesis of a ratification, are erroneous.

The judgment will be reversed, and the cause remanded. All the judges concur.